# United States District Court, Northern District of Illinois

MHK

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10-C-3305 | **DATE** | November 16, 2010 |
| **CASE TITLE** | Eastek Int'l Corp. v. Ingersoll-Rand Co. | | |

**DOCKET ENTRY TEXT:**

The Court GRANTS in part and DENIES in part the Defendant's Motion to Dismiss (doc. #12). Defendant to answer or otherwise plead on or before December 16, 2010. Status Hearing set for January 6, 2011 at 9:30 a.m.

■[ For further details see below.]                        Docketing to mail notice.

## STATEMENT

  Eastek International Corporation and Ingersoll-Rand Company entered into contract in May 2002. Eastek has sued Ingersoll-Rand, alleging that Ingersoll-Rand breached the parties' contract and raising in the alternative claims of unjust enrichment and promissory estoppel. Ingersoll-Rand moves to dismiss.
  In May 2002, Eastek and Ingersoll-Rand entered into a Parts Warehousing Letter of Agreement. The 2002 Warehousing Agreement called for Eastek to supply Ingersoll-Rand with filter regulator lubricators (FRLs). Eastek was responsible for delivering an inventory of FRLs to a warehouse in Buffalo Grove, Illinois, maintaining that inventory at an agreed upon level, and reviewing the inventory twice per year to monitor its status and Ingersoll-Rand's usage of the FRLs. The 2002 Warehousing Agreement required Ingersoll-Rand to create a blanked purchase order equivalent to one-years usage of FRLs and to review the inventory status at the Buffalo Grove warehouse twice per year. The 2002 Warehousing Agreement had at term of one year, but renewed automatically for one-year periods unless cancelled by either party with 120 days prior written notice to the non-cancelling party. In March 2004, the parties negotiated an amended Warehousing Agreement. Ingersoll-Rand drafted the 2004 Amended Warehousing Agreement and delivered it to Eastek. However, neither party signed the 2004 Amended Warehousing Agreement. Five years later, in May 2009, Ingersoll-Rand ceased communicating with Eastek, but did not provide Eastek written notice that it was cancelling the parties' agreement. Eastek continued to stock the warehouse, and now claims that Ingersoll-Rand owes it $121,540 for the materials therein. Ingersoll-Rand moves to dismiss, arguing that the 2004 Amended Warehousing Agreement is not enforceable because it was not signed and that Eastek cannot recover under its equitable theories because a contract governs the parties' relationship.

## STATEMENT

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Tricontinental Indus., Ltd. v. Price WaterhouseCoopers*, 475 F.3d 824, 833 (7th Cir. 2007). Although the Court may not look to matters outside the pleadings in resolving a motion to dismiss, the Court considers documents attached to the complaint as part of the complaint itself. *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); Fed. R. Civ. P. 10(c).

Ingersoll-Rand argues that Eastek's breach of contract claim should be dismissed because the parties did not sign the 2004 Amended Warehousing Agreement. The 2002 Warehousing Agreement contains a clause that requires amendments to the agreement to be made in writing and signed by both parties. Eastek attached the 2004 Amended Warehousing Agreement to its Complaint, and the copy it attaches indeed is unsigned. While the unsigned version of the 2004 Amended Warehousing Agreement may be unenforceable, Ingersoll-Rand ignores the fact that Eastek's breach of contract claim relies not only on the 2004 Amended Warehousing Agreement, but also on the 2002 Warehousing Agreement. Eastek alleges that Ingersoll-Rand never provided written notice of its intent to cancel the 2002 Warehousing Agreement and that Ingersoll-Rand owed it for FRLs delivered to the Buffalo Grove warehouse pursuant to that Agreement. Those allegations are sufficient to state a claim for breach of a contract.

Ingersoll-Rand next argues that Eastek cannot plead its unjust enrichment claim in the alternative because it merely re-labels the breach of contract claim. Quasi-contractual theories of recovery are not a mechanism to shift the risk one has assumed under a contract. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Where parties have entered into a binding contract on the same subject matter, a party may not pursue a quasi-contractual remedy. *Id.* While parties may plead in the alternative, quasi-contractual relief is available only if the court finds that no contract was formed. *Id.* In this case, the parties agree that the 2002 Warehousing Agreement established a contractual relationship between the parties. Eastek argues, however, that the parties amended that Agreement and reasons that if the Court finds the 2004 Amended Warehousing Agreement to be unenforceable, it should be allowed to pursue its unjust enrichment claims. Eastek neglects to consider that in the event that the 2004 Amended Warehousing Agreement is not enforceable, a contract — the 2002 Warehousing Agreement — nevertheless still governs the parties' relationship and concerns the same subject matter (the FRLs in the Buffalo Grove warehouse). Eastek does not plead that its unjust enrichment claim is distinct from the parties' express agreement. To the contrary, Eastek pleads that it was directed to manufacture goods "in accordance with the [2002 Warehousing Agreement.]" See Compl. ¶¶ 23, 25. Accordingly, because the parties do not dispute that the 2002 Warehousing Agreement exists, Eastek cannot plead its unjust enrichment claim in the alternative.

Finally, Ingersoll-Rand argues that the statute of frauds bars Eastek's promissory estoppel claim. Where the statute of frauds bars a contract claim, it also bars a promissory estoppel claim based on the same allegations of an alleged oral agreement. *Dickens v. Quincy Coll. Corp.*, 615 N.E.2d 381 (Ill App. 3d 1993); *Olympic Holding Co., LLC v. Ace Ltd.*, 909 N.E.2d 93, 99-100 (Ohio 2009). Given that Ingersoll-Rand drafted and delivered the 2004 Amended Warehousing Agreement, it is not clear that the statute of frauds would bar Eastek's breach of contract claim. *See, e.g., Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295-96 (7th Cir. 2002) (discussing the requirement of a signed writing for statute of frauds purposes). Moreover, several exceptions to the statute of frauds — notably the merchant's exception, 810 ILCS 5/2-201(2), and the specially manufactured goods exception, 810 ILCS 5/2-201(3)(a) — appear to be applicable.

The Court GRANTS in part and DENIES in part Ingersoll-Rand's Motion to Dismiss. The Court dismisses Count II of Eastek's Complaint with prejudice.